1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL LILLIAN PRIETO, | Case No. 1:21-cv-00816-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | (ECF Nos. 24, 26) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.

## INTRODUCTION

Rachel Lillian Prieto ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]  Plaintiff submits the ALJ erred because: (1) substantial evidence does not support the ALJ's determination that Plaintiff's past relevant work ("PRW") as caregiver constituted substantial gainful activity ("SGA") and does not support the ALJ's finding of non-disability at step four; and (2) the ALJ's residual functional capacity finding is not based on substantial evidence.  For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 7, 11, 12.)

## II.

## BACKGROUND

### A.      Procedural History

Plaintiff was previously found not disabled in determinations dated April 4, 2006, and October 19, 2016.  (Administrative Record ("AR") 195.)  Plaintiff filed a Title XVI application for supplemental security income, alleging a period of disability beginning on June 8, 2016.  (AR 180-88.)[2]  Plaintiff's application was initially denied on April 4, 2019, and denied upon reconsideration on July 11, 2019.  (AR 91-96, 100-106.)  On July 18, 2019, Plaintiff requested a hearing, and on October 15, 2020, testified at a hearing before Administrative Law Judge Shane McGovern (the "ALJ").  (AR 29-62, 170.)  On November 20, 2020, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 12-28.)  On April 8, 2021, the Appeals Council denied Plaintiff's request for review.  (AR 1-6.)

On May 19, 2021, Plaintiff filed this action for judicial review.  (ECF No. 1.)  On November 17, 2021, Defendant filed the administrative record in this action.  (ECF No. 13.)  On May 6, 2022, Plaintiff filed an opening brief.  (Pl.'s Opening Br. ("Br."), ECF No. 24.)  On June 6, 2022, Defendant filed an opposition brief.  (Def.'s Opp'n ("Opp'n"), ECF No. 26.)  Plaintiff did not file any reply brief.

### B.      The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, November 20, 2020:

- The claimant has not engaged in substantial gainful activity since January 4, 2019, the application date (20 CFR 416.971 *et seq*.).

- The claimant has the following severe impairments: cervical and thoracic spine degenerative disc disease, hypertension, type II diabetes mellitus, and headaches (20 CFR 416.920(c)).

- The claimant does not have an impairment or combination of impairments that meets or

---

[2]  Both parties state the application date is January 4, 2019 (Br. 2; Opp'n 4), however, the application appears to be dated March 13, 2019.  (AR 180-88.)

medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

- Plaintiff has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except that she is limited to no more than occasional overhead reaching bilaterally.

- The claimant is capable of performing past relevant work as an in-home caregiver. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

- The claimant has not been under a disability, as defined in the Social Security Act, since January 4, 2019, the date the application was filed (20 CFR 416.920(f)).

(AR 15-24.)

# III.

# LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[3] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

---

[3] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. §404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The regulations are generally the same for both types of benefits. Therefore, further references are to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).   "Substantial evidence" means more than a scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

///

///

1          IV.

2          DISCUSSION AND ANALYSIS

3          Plaintiff argues error for two primary reasons: (1) substantial evidence does not support

4    the ALJ's determination that Plaintiff's PRW as caregiver constituted SGA and does not support

5    the ALJ's finding of non-disability at step four; and (2) the ALJ's residual functional capacity

6    finding is not based on substantial evidence.

7          A.    The ALJ Did Not Err At Step Four

8          "At step four, claimants have the burden of showing that they can no longer perform their

9    past relevant work." Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001) (citing 20 C.F.R. §§

10   404.1520(e), 416.920(e); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir.1990)); see also Lewis v.

11   Apfel, 236 F.3d 503, 515 (9th Cir. 2001) (claimant has burden of showing they do not have the

12   RFC to engage in past relevant work).  While the claimant has the burden of proof at step four,

13   "the ALJ still has a duty to make the requisite factual findings to support his conclusion." Pinto,

14   249 F.3d at 844.  "This is done by looking at the 'residual functional capacity and the physical

15   and mental demands' of the claimant's past relevant work." Id. at 844-45 (quoting 20 C.F.R. §§

16   404.1520(e), 416.920(e)).  The claimant must be able to perform: (1) the actual functional

17   demands and job duties of a particular past relevant job; or (2) the functional demands and job

18   duties of the occupation as generally required by employers throughout the national economy.

19   Pinto, 249 F.3d at 844 (citing Titles II & XVI: A Disability Claimant's Capacity to Do Past

20   Relevant Work, in Gen., SSR 82-62 (S.S.A. 1982)).  Thus, the ALJ must make specific factual

21   findings as to the claimant's RFC, the physical and mental demands of the past relevant work,

22   and the relation of the RFC to the past work.  Id.

23          The ALJ determined Plaintiff was not disabled based on a finding at step four that she

24   could perform her past relevant work ("PRW") as an "in-home caregiver," DOT 354.377-014, as

25   generally performed in the national economy.  (AR 23.)  Plaintiff argues substantial evidence

26   does not support the determination that Plaintiff's PRW as an "in-home caregiver" constitutes

27   Substantial Gainful Activity ("SGA") pursuant to the SSA rules, regulations and prevailing case

28   law.  Plaintiff submits a lack of an earnings record creates a presumption that she did not engage

1  in SGA.  Otero Suarez v. Barnhart, No. CV 05-792 E, 2005 WL 2305012, at *2 (C.D. Cal. Sept.

2  21, 2005) (citing 20 C.F.R. §§ 404.1574(b)(3), 416.974(b)(3); Lewis, 236 F.3d at 515).   The

3  Court first turns to discuss the caselaw cited by Plaintiff.

4        PRW consists of any work that was done within the last 15 years, that was done over a

5  long enough duration to learn to do it, and was substantial gainful activity.  Otero, 2005 WL

6  2305012, at *2 (citations omitted).  "Earnings can be a presumptive, but not conclusive, sign of

7  whether a job is substantial gainful activity."  Lewis, 236 F.3d at 515; Otero, 2005 WL 2305012,

8  at *2 (same).

9        At the time of the decision in Lewis, the Ninth Circuit stated that monthly earnings of

10  less than $300 generally showed the claimant had not engaged in SGA, but earnings averaging

11  over $500 generally did show SGA.   Lewis, 236 F.3d at 515.   In that case, the claimant's

12  earnings averaged less than $300 per month.  Id.  The Ninth Circuit stated that the presumption

13  arising from these low earnings shifted the step four burden of proof to the Commissioner.  Id.

14  "With the presumption, the claimant has carried his or her burden unless the ALJ points to

15  substantial evidence, aside from earnings, that the claimant *has* engaged in substantial gainful

16  activity."  Id. (emphasis in original).

17        In Otero, the ALJ found the claimant's earnings record showed no earnings since 1974,

18  and the court agreed with the claimant that the ALJ should have concluded the claimant had no

19  SGA and thus no PRW, as substantial evidence did not support a finding that Otero had PRW as

20  a painter and delivery driver.   Otero, 2005 WL 2305012, at *2 ("The finding that Plaintiff's

21  earnings record shows no earnings from 1974 to the present triggers a presumption that Plaintiff

22  has not engaged in substantial gainful activity . . . [t]o rebut this presumption, the ALJ must point

23  to substantial evidence, aside from earnings, that the claimant has engaged in substantial gainful

24  activity.").

25        Here, Plaintiff argues that the ALJ harmfully erred by failing to explore each of the

26  factors listed in the regulations.  (Br. 8.)  As noted in Lewis, these "regulations list five factors:

27  the nature of the claimant's work, how well the claimant does the work, if the work is done under

28  special conditions, if the claimant is self-employed, and the amount of time the claimant spends

1  at work."   Lewis, 236 F.3d at 515–16 (citing 20 C.F.R. §§ 404.1573 & 416.973; Katz v.

2  Secretary of Health and Human Servs., 972 F.2d 290, 293 (9th Cir.1992)).  In Otero, the district

3  court concluded the "ALJ, however, failed to discuss any of these factors in her decision."

4  Otero, 2005 WL 2305012, at *2 ("[s]uch evidence can include").  There, the ALJ specifically

5  made findings that there were no earnings from 1974, but also specifically stated it was not clear

6  when Plaintiff worked as a painter and delivery driver, and despite these findings, found this

7  work to be PRW.  Id.  Given the presumption that flowed from the ALJ's finding of no earnings,

8  the ALJ was required to rebut the presumption with substantial evidence, aside from earnings,

9  that the claimant has engaged in substantial gainful activity.  Id.

10        Having preliminarily discussed the relevant law cited by Plaintiff, the Court now turns to

11  the ALJ's findings and Plaintiff's more pointed arguments.  The ALJ made the following

12  findings:

13         The claimant reported that she worked as a server in 2009 and as a
           caregiver in 2011 (Exhibit 4E). The claimant reported that she
14         worked as a caregiver for four to five months and earned $600
           every two weeks, but she stated that she did not receive paystubs
15         (Exhibit 3A, page 5). The claimant's earnings record shows no
           income since 2001 (Exhibit 4D). At the hearing the claimant
16         testified that she worked as a care giver, but she only did this job
           for two months. She testified that she took over this job from her
17         cousin, but she had to quit when her employer took her
           fingerprints. The claimant testified that this was a live-in position
18         where she was taking care of six people in a house. She testified
           that she had to lift a lady who weighed about 180 or 190 pounds.
19
           The vocational expert characterized the claimant's past work as a
20         home attendant or care giver, Dictionary of Occupational Titles
           (DOT) number 354.377-014, as generally medium exertion but
21         very heavy exertion as performed by the claimant, and semiskilled,
           with a specific vocational preparation (SVP) level of 3. The
22         vocational expert testified that an SVP 3 job requires one to three
           months to learn the job duties.
23
           Although the claimant has given somewhat conflicting information
24         about her past work, the undersigned concludes that the job of
           caregiver satisfies the definition of past relevant work as required
25         by Social Security Ruling 82-62. Based on the information the
           claimant provided to the Disability Determination Service at the
26         reconsideration determination, her work as a caregiver was
           substantial gainful activity, the claimant performed the work long
27         enough to achieve average performance, and the claimant
           performed the work within the relevant 15-year period. The
28         minimum average monthly income required to demonstrate SGA

in 2011 was $1000, and based on her statements she earned about $1200 per month at this job (Exhibit 3A, page 5). Furthermore, she stated that she did this job for four to five months (Exhibit 3A, page 5), which would satisfy the amount of time required to learn the job duties and achieve average performance for an SVP 3 job. Therefore, her work as a caregiver is past relevant work.

(AR 23.)

1.    The ALJ's Reliance on Exhibit 3A/5

Plaintiff argues "Exhibit 3A/5" does not constitute substantial evidence to support a finding that Plaintiff engaged in SGA, as it is not an earnings record or a work history report, but rather is a random, unsigned notation in a DDS record dated June 21, 2019.

The Court notes the entries in this exhibit are under a section entitled "Claim Communications," under "Authorized Rep."  (AR 76 (capitalization and font altered).)  The record contains an entry dated May 17, 2019, at 10:40 a.m, noting information from counsel Jonathan Pena ("Mr. Peña"), with the entry reading: "LVM need to see how long she was a caregiver?  Query shows no earnings," signed by "Roberta Duarte, DEA." (AR 76.)  An entry below that dated June 6, 2019, states "PC from rep's office they would like a barcode to submit an MSS . . . Also, advised them we still need to know how long she did caregiver job?  They stated [claimant] has not responded to them yet.  Let them know I will only hold the case till tomorrow for info as it has been over the 10 days.  He understood and will try to get a hold of the claimant." (AR 76.)  An entry below that dated June 21, 2019, states: "She was a caregiver [and] did it for 4-5 [months].  She did earn $600 every [two weeks] which monthly is $1200[,] which is SGA, didn't get a check stub as [claimant] had to be let go as her fingerprinting didn't pass the background check." (AR 76.)

Plaintiff contends there is "no reference" as to where this information came from, who took the information, and there is no supporting evidence of record regarding the length of time Plaintiff performed this work or the amount of money she earned.  (Br. 9-10.)  Plaintiff emphasizes her testimony: that she did not remember when she last worked or where (whether it was a facility or private home) (AR 46, 57); concerning whether she last worked in 2009 or 2011 (AR 48); and that she only worked for a couple of months (AR 47).  (Br. 10.)  Plaintiff directs

1   the Court to consider her testimony that she had to quit for various reasons, including because

2   she was fingerprinted in El Paso (AR 47), and  "because I was so skinny and I had went to the

3   doctor and I wasn't feeling good you know.  Went to the hospital emergency and they told me I

4   was a diabetic.  Everybody was telling me I was getting so skinny, I looked like a skeleton.  You

5   know, they thought I was on drugs and I had to go to the emergency to find out that I had

6   diabetes because I was getting real skinny…so it was after that, I quit, you know because –I

7   don't know.  And then they found out I had high blood pressure and you know…" (AR 49); in

8   addition to her testimony that she "wanted to keep working but just –I couldn't.  I don't know,"

9   (AR 57).  (Br. 10.)  In sum, Plaintiff emphasizes there is no discussion, one way or the other, of

10  how much money she made performing this job and no earnings record to establish her earnings,

11  and the notation cited to by the ALJ in the decision is not repeated, mentioned, discussed or

12  corroborated anywhere in the record and as such cannot constitute substantial evidence that

13  Plaintiff engaged in SGA.

14      Defendant responds that Plaintiff's characterization of the record as unsupported by

15  information concerning who took or provided the information, is incorrect.  Defendant highlights

16  the cited document is an electronically signed and dated report by Roberta Duarte, a disability

17  evaluation analyst ("DEA') of the California Disability Determination Service, documenting a

18  telephone conversation with Plaintiff's hearing-level representative on June 21, 2019, following

19  up from a prior call from June 6, 2019, meant to develop information about Plaintiff's work

20  record.  During the later call, the representative told Ms. Duarte, in relevant part, that Plaintiff

21  earned $600.00 every two weeks, or approximately $1,200.00 per month, while employed as a

22  Caregiver.  Plaintiff did not file a reply and thus did not respond to Defendant's argument here.

23      As for Plaintiff's statement that the cited information "is not repeated, mentioned,

24  discussed or corroborated anywhere in the record," Defendant proffers this statement is also

25  incorrect.  First, upon completing the application for SSI in March 2019, Plaintiff and her

26  attorneys reported that the claimant earned $600.00 biweekly while employed as a Caregiver in

27  2011.  (AR 199.)  The Court notes this record provides that she worked as a "Caregiver," the

28  type of business is "Supportive services," she reported working from 2011 to 2011 but did not

1   provide the months where directed, she reported working 6 hours per day 5 days a week, and

2   reported earning $600 bi-weekly.  (AR 199.)

3          Defendant also states counsel Mr. Peña affirmatively reported that the prior work as a

4   Caregiver was past relevant work.  (AR 281).  Specifically, the hearing brief dated October 12,

5   2020, contains the following notation pertaining to step four:

6               Step Four:  Ms. Prieto has past relevant work as a caregiver
             and a server (4E).  As described below, she is unable to perform
7             full-time work at any exertional level.  Therefore, she is unable to
             perform [her] past relevant work.
8

9   (AR 281.)  Defendant also directs to the Court to two work history reports, wherein Plaintiff

10  reported that she earned $600.00 biweekly while employed as a Caregiver in 2011.  (AR 205,

11  217).  The first record does report Plaintiff worked as a caregiver in 2011, worked 6 hours per

12  day 5 days a week, earning $600 bi-weekly.  (AR 204-205.)  This appears to be a computer

13  generated output from an electronic application, and the signature/date portion is blank.  (AR

14  211.)  However, it appears to be part of the same larger application dated March 13, 2019.  (AR

15  194-211.)  The months in 2011 are again omitted.  (Id.)  The second record is a handwritten form

16  completed March 15, 2019, wherein, Plaintiff appears to have directly written in the same

17  information about working as a caregiver in 2011, earning $600 bi-weekly.  (AR 216-217.)  It

18  appears Plaintiff initially checked the box for monthly pay, however, the bi-weekly box was then

19  fully checked off.  (AR 217.)  Again, Plaintiff did not file a reply and thus did not respond to

20  Defendant's citations to these records, and mounts no arguments as to why these records do not

21  provide additional support for finding substantial evidence supports the ALJ's determination.

22         The Court finds the cited records do provide support for the ALJ's finding that Plaintiff

23  engaged in SGA due to earnings surpassing the level of $1,000 per month, and this constitutes

24  substantial evidence in support of the finding.  See Smolen, 80 F.3d at 1279 (substantial evidence

25  more than a scintilla, but less than a preponderance); Burch, 400 F.3d at 679 ("Where evidence is

26  susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

27  upheld.").

28  ///

1        2.      Ambiguity Reflected in the Hearing Transcript and Earnings Presumption

2        Plaintiff additionally argues that review of the hearing testimony transcript reveals the

3   ALJ identified significant ambiguity surrounding the issue of whether Ms. Prieto performed

4   SGA.  First, Plaintiff directs the Court to the following exchange, which includes a reference to

5   Plaintiff's memory issues, which the Court reproduces in larger relevant part:

6               ALJ: Okay. And Mr. Martinez, yeah, I mean I think that past work
                is kind of a sticking point.  I know it was for DDS, and I'm going
7               to have to take a good look at that – have you talked to your client,
                Mr. Martinez, if there's any paperwork or pay stubs, or anything
8               there to try to document what we were doing.

9               ATTY: Yes, but as I'm sure you've – she has a very hard time with
                memory and recalling specific information and any paperwork she
10              has a hard time with.  So unfortunately, I don't think that we have
                anything to document that, the work attempt or work background.
11
                ALJ: Okay.  All right.  Well, I'll go through and do the best I can
12              with it.  I mean rest assured if the care giver position is kind of
                what everything hinges on, I mean I'll do my best to kind of suss
13              out as best I can what we've got.  It sounds like there's nothing
                else really there to take a look at from what you've gathered?
14
                ATTY: As far as I can tell, no.
15

16  (AR 50-51.)  Plaintiff then highlights the following exchange:

17              I was trying to see – I mean it seems like if it were a company, it
                would have shown up in the detailed –
18
                A It wasn't a company.
19
                ALJ: It wasn't.  Yeah, I have a feeling it might have been some
20              kind of self-employment type of situation or something similar.

21  (AR 57.)   Plaintiff highlights the ALJ's posture on this point when the ALJ made his

22  conclusions:

23                   You know, it's close on the SGA there.  The testimony
                today is more like, what, a couple months or something I think.  So
24              I'll see.  If there's anything, you know, you all dig up in the
                meantime.
25                   I mean it sounds like you've done your due diligence there,
                but you know, if something comes up talking to your client
26              afterwards, or there's something you think would be helpful for
                me, you know, I'll take a look at it for sure.  So -- . . .
27
                . . . Yeah, I mean – I'll throw that out there to you, and yeah, if we
28              don't have past work, you know, I'm pretty sure – you know,

11

1   because we don't have any step one issues.  I'm pretty sure we're
    looking at that special medical vocational profile
2           But yeah, I mean if you have anything, great.  I'll certainly
    take a look.  Yeah, I mean I'll do what I can here to try to piece
3   together what we've got.

4   (AR 61.)

5          Plaintiff argues that because there was no earnings record, there was a presumption she

6   did not engage in SGA, and that the ALJ's duty to develop the record was triggered given the

7   acknowledgment of ambiguity as to this past work.  Plaintiff submits the ALJ's attempt to

8   "remedy" this ambiguity by "piecing together what we've got" (AR 61) because the ALJ had a

9   "feeling" it might be self-employment (AR 57), with one uncredited and uncorroborated

10  reference in the DDS report (discussed in the previous subsection), does not constitute

11  substantial evidence to meet the burden to establish that Plaintiff performed SGA.

12         In response, Defendant frames Plaintiff's appeal as Plaintiff simply now asserting her

13  previous admissions should be ignored, and this Court should conclude the work was not past

14  relevant work because Plaintiff and her employer did not report her income therefrom to the

15  Internal Revenue Service, and because there is purportedly no other evidence of her earnings.

16  Defendant contends Plaintiff's arguments should be rejected as unsupported.  In response to

17  these arguments, Defendant provides the Court with a layout of the events and record, that

18  Plaintiff left unaddressed with no reply briefing.

19         Specifically, Defendant highlights that while Plaintiff has reported no income to the

20  Internal Revenue Service since 2001 (AR 189-90, 192), upon completing her application for SSI

21  in March 2019, Plaintiff and her attorneys reported that she was employed as a Caregiver for 30

22  hours per week for a bi-weekly wage of $600.00 during 2011.  (AR 199.)  When her claim was

23  processed at the reconsideration level, an employee of the California Disability Determination

24  Service, Roberta Duarte, contacted Plaintiff's hearing-level attorneys for further information

25  about her work activity on June 21, 2019.  (AR 76.)  Ms. Duarte was informed that Plaintiff had

26  been employed as a Caregiver for between four and five months, was paid $600.00 biweekly,

27  and did not receive a paystub because she was "let go as her fingerprinting didn't pass the

28  background check."  (Id.)  As the ALJ noted in the hearing decision, average monthly earnings

equal to or in excess of $1,000.00 during 2011 generally demonstrated an individual's engagement in substantial gainful activity (AR 23). See 20 C.F.R. § 416.974; *Substantial Gainful Activity*, *Monthly substantial gainful activity by disability type*, Social Security Administration, https://www.ssa.gov/oact/cola/sga.html (last visited August 30, 2022). In a pre-hearing brief dated October 12, 2020, one of Plaintiff's attorneys, Mr. Peña, conceded that Plaintiff "has past relevant work as a caregiver." (AR 281.) Although Plaintiff initially testified that she did not remember when she last worked, she ultimately testified that she worked as a live-in Caregiver for six individuals for a period of approximately two months around 2009 (Tr. 46-48).

The Court notes the following testimony, that provides support for the reference note of Ms. Duarte that pertains to fingerprinting, though does also demonstrate potential support for memory problems in that it references 2009 instead of 2011:

> Q        Okay.  Do you remember being a care giver for a time?
>
> A        Yeah, I remember but I only worked for that for two months, and then they – you know, I had started because my cousin got me that job.  I was taking over for him, but I was working under my name.  And they fingerprinted me, in El Paso.  I had to quit.
>
> Q        So you think you did the care – work for a couple months?
>
> A        Yeah.
>
> Q        Okay.
>
> A        But it was a live-in.
>
> Q        A live-in, okay.  So you're living with the – were you taking care of one person, or were you taking care of a bunch of –
>
> A        No, it was six people I had to take – like make then breakfast, and given them their pills, and like, you know, wake them up or you know, pick them up and stuff, yeah.
>
> Q        Okay.  And do you think you did for a couple months?
>
> A        Yeah, around there.

1    Q      Okay.  Do you remember when that was?  I've got
2    your work history report at 4E.  It looks like that that might have
     been around 2011.  Does that sound right?

3    A      No, it's longer than that.

4    Q      Okay.  You think it was further back in time?

5    A      It was like about 2009.  I'm not sure.  It was around
6    there somewhere.

7    (AR 46-48.)  Defendant highlights that Plaintiff provided no information about her earnings that

8    was contrary to the prior statements by Plaintiff and her attorneys.  (Id.)  Defendant argues

9    substantial evidence supports the ALJ's findings and conclusions.  The Court agrees.

10         The ALJ found Plaintiff had past relevant work as a Caregiver (DOT 354.377-014).  Past

11   relevant work consists of any work that was "done within the last 15 years, lasted long enough

12   for [the claimant] to learn to do it, and was substantial gainful activity."  20 C.F.R. § 416.965(a);

13   Vertigan v. Halter, 260 F.3d 1044, 1051 (9th Cir. 2001); Otero, 2005 WL 2305012, at *2.  There

14   is no apparent dispute as to whether the prior work as a Caregiver was performed within the 15

15   years ending on the date the hearing decision was issued, or whether the work was performed

16   long enough for Plaintiff to learn to do it.  As to whether it was performed at the level of

17   substantial gainful activity, the ALJ observed that it was reported that Plaintiff earned $600.00

18   biweekly while employed, which exceeds the presumptive substantial gainful activity threshold

19   in place at the time Plaintiff performed the prior work as a Caregiver.  The Court finds the ALJ

20   properly supported this finding with the notes of Ms. Duarte documenting the June 21, 2019

21   conversation with Plaintiff's hearing-level legal representatives, and the earnings information

22   provided by Plaintiff's attorneys to Ms. Duarte was consistent with the statements upon

23   completion of Plaintiff's application in March 2019 (AR 199), and counsel Mr. Peña's pre-

24   hearing brief that reported Plaintiff's self-identified employment as a Caregiver was past relevant

25   work (AR 205, 217, 21).

26         Defendant frames Plaintiff's challenge as simply proffering that because the earnings

27   record does not reflect either Plaintiff or her employer having reported her income to the Internal

28   Revenue Service and because she did not (or could not) produce any paystubs from her

employment, the ALJ could not have found that the work was performed at the level of substantial gainful activity absent additional analysis, and that a presumption that Plaintiff did not engage in substantial gainful activity can only be rebutted upon consideration of the five factors discussed above: the nature of her work, how she did the work, whether the work was done under special condition, whether she was self-employed, and the amount of time she spent at work. Otero, 2005 WL 2305012, at *2. Incorporating the Court's discussion of the legal standards above, the Court agrees that Plaintiff's reliance on Otero and Lewis is misplaced. When evaluating whether work activity was performed at the level of substantial gainful activity, "[g]enerally . . . our primary consideration will be the earnings [Plaintiff] derive[d] from the work activity." 20 C.F.R. § 416.974(a)(1). Nothing in the regulations or the authority identified by Plaintiff demands that the earnings information be in a particular form (e.g., tax records, paystubs, statement from the employer, statement from a claimant).

Defendant proffers that an ALJ need not provide specific, articulated consideration of the five factors other than earnings unless the earnings information is somehow insufficient to determine whether Plaintiff engaged in substantial gainful activity or there is some other evidence showing that not all of the earnings should be counted, such as evidence of subsidies or excludable impairment-related work expenses. See 20 C.F.R. § 416.974(a)(1) ("We will use your earnings to determine whether you have done substantial gainful activity unless we have information from you, your employer, or others that shows that we should not count all of your earnings."). The Court finds the information of record highlighted herein provides sufficient information for the ALJ to evaluate whether earnings demonstrated her engagement in substantial gainful activity. Plaintiff has not alleged any reason why the reported earnings should be reduced below the level of substantial gainful activity, nor does Plaintiff argue that the amount she and her attorneys reported is inaccurate. [4] The Court therefore finds ALJ's express consideration of Plaintiff's "somewhat conflicting information" and citation to the reports of

---

[4] Further, Defendant argues that if relevant, Plaintiff's alleged memory deficits are wholly uncorroborated (i.e., not medically determinable). Specifically, Plaintiff did not allege memory deficits as being as basis for her claim and does not object to the ALJ's finding that she had no medically determinable mental impairment. Further, the Court agrees that amongst the inconsistent statements she provided regarding her work activity, none of the inconsistencies related to her earnings, which is not insignificant given Plaintiff's proffer of extensive parts of her testimony.

1    earnings (AR 23) to resolve the conflicting information provides substantial evidence for the

2    ALJ's determination regarding earnings.  See Pinto, 249 F.3d at 844 (While the claimant has the

3    burden of proof at step four, "the ALJ still has a duty to make the requisite factual findings to

4    support his conclusion.").

5          While there was discussion of ambiguity during the hearing, the Court is inclined to

6    conclude the trigger for the presumption that would require additional analysis was not present

7    here.  There was no actual conflicting evidence regarding Plaintiff's earnings that demonstrated

8    Plaintiff earned less than a level of SGA, that would then require the ALJ to proceed to

9    determine whether the other factors demonstrated such work would qualify as SGA *despite*

10   earning less than the SGA cutoff.  Plaintiff utilizes Lewis and Otero to argue that the absence of

11   income on her earnings reports creates a presumption that her work activity was not substantial

12   gainful activity, notwithstanding the reports of both Plaintiff and her attorneys about her

13   earnings.  However, in both Otero and Lewis, the claimants' income *was* reported to the Internal

14   Revenue Service and the reported earnings (documented in the casefile) were below the

15   substantial gainful activity threshold, creating a presumption that the work activity did not rise to

16   the level of substantial gainful activity that the ALJ did not rebut with other, countervailing

17   evidence.  Otero, 2005 WL 2305012, at *2; Lewis, 236 F.3d at 515–16.  Here however,

18   Plaintiff's income *was not* reported to the Internal Revenue Service and the ALJ pointed to a

19   report by Plaintiff's own legal representatives demonstrating that her earnings were consistent

20   with substantial gainful activity.  (AR 23, 76.)  Again, Plaintiff did not submit a reply brief, her

21   hearing testimony in fact did not proffer a different claimed amount of income at the caregiver

22   position, and Plaintiff does not now argue that the factual finding is actually incorrect.

23         Defendant does not dispute that Plaintiff correctly identifies that the ALJ identified a

24   potential ambiguity regarding Plaintiff's work history at the time of the hearing.  (Br. 10-11; AR

25   50-51, 57, 61.)  The Court finds it significant however that the ALJ did not omit or neglect the

26   fact that there was ambiguity or inconsistency, *in the Plaintiff's statements*.  The ALJ stated:

27   "[a]lthough the claimant has given somewhat conflicting information about her past work, the

28   undersigned concludes that the job of caregiver satisfies the definition of past relevant work as

required by Social Security Ruling 82-62 [and] [b]ased on the information the claimant provided to the Disability Determination Service at the reconsideration determination, her work as a caregiver was substantial gainful activity."  (AR 23.)  The Court finds the ALJ sufficiently resolved the relevant conflict by relying upon the statements of Plaintiff and her legal representatives.  Further, the relied-upon information is consistent with other evidence of record in the record, and again, Plaintiff does not argue that the amount she and her attorneys reported is inaccurate.

The Court recognizes that the ALJ in fact referenced the fact DDS perhaps found this to be a sticking point and was already aware on the statement of Ms. Duarte.  (AR 50-51.)  However, the ALJ clearly recognized that the Plaintiff's testimony reflected "somewhat conflicting information about her past work," but despite that observation, the ALJ concluded the job of caregiver satisfied the definition of past relevant work, based on the information that Plaintiff herself provided to DDS at the reconsideration level, and that it was substantial gainful activity.  The ALJ utilized Plaintiff's report that she earned $1,200 per month for 4 to 5 months.  This report is supported by other substantial evidence in the record, and Plaintiff never claimed the reported income amount was in fact incorrect.  Further, this case is distinguishable from cases where the evidence indicated such lower level of earnings, or where the opinion left no specific reasoning for the court to analyze.  See Adams v. Berryhill, No. CV 17-8724 JC, 2019 WL 688202, at *5 (C.D. Cal. Feb. 19, 2019) ("[T]he ALJ determined that plaintiff retained the residual functional capacity to return to past relevant work as a self-employed painter, but pointed to nothing in the record which supported finding that plaintiff's painting job could qualify as past *relevant* work at all . . .[a]bsent some explanation regarding how the ALJ arrived at such a fundamental assumption regarding plaintiff's work history, the Court is unable to conduct a meaningful review of the ALJ's non-disability determination at step four."); Michael L. v. Kijakai, No. 2:20-CV-06440-AFM, 2021 WL 5868326, at *4 (C.D. Cal. Dec. 9, 2021) ("Plaintiff's Earnings Statements indicate that from 2003 through 2017, his earnings fell far below the level required to constitute substantial gainful activity . . . ALJ was not permitted to disregard such evidence without explanation."); Fernandez v. Berryhill, No. EDCV 16-0890 SS,

2017 WL 2541399, at *4 (C.D. Cal. June 12, 2017) ("does not discuss why the ALJ concludes that this work was performed at the level of substantial gainful activity. During the hearing, the ALJ questioned Plaintiff about his job as a newspaper salesperson, but the ALJ did not make a finding on whether this employment was performed at the level of substantial gainful activity."); Wagner v. Comm'r of Soc. Sec. Admin., No. CV-20-08042-PCT-MTL, 2021 WL 1056397, at *3 (D. Ariz. Mar. 18, 2021) ("The ALJ's decision does not indicate whether he relied on the June 2007 end-date to conclude Plaintiff earned more than the threshold substantial gainful activity amount. Nor is there reasoning that, despite low earnings, other factors rebutted the presumption that the driver position was not substantial gainful activity.").

Accordingly, for the above explained reasons, the Court does not find the presumption claimed by Plaintiff was triggered here. Lewis, 236 F.3d at 515 (presumption arose from evidence documenting earnings of $300, specifically lower than the $500 threshold); Otero, 2005 WL 2305012, at *2 ("The finding that Plaintiff's earnings record shows no earnings from 1974 to the present triggers a presumption that Plaintiff has not engaged in substantial gainful activity."). The Court finds the ALJ's findings regarding substantial gainful activity and past relevant work at step four was based on substantial evidence cited by the ALJ in the form of Plaintiff's own reported income, and that such reports are supported by other substantial evidence in the record. See Smolen, 80 F.3d at 1279 (substantial evidence more than a scintilla, but less than a preponderance); Burch, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

### B.    The ALJ's RFC Determination is Proper and Supported by Substantial Evidence in the Record

#### 1.    Legal Standards

A claimant's RFC is "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). The RFC is "based on all the relevant evidence in [the] case record." 20 C.F.R. § 416.945(a)(1). "The ALJ must consider a claimant's physical and mental abilities, § 416.920(b) and (c), as well as the total limiting effects caused by medically determinable impairments and the claimant's subjective experiences of pain, § 416.920(e)." Garrison v.

1   Colvin, 759 F.3d 995, 1011 (9th Cir. 2014).   At step four the RFC is used to determine if a

2   claimant can do past relevant work and at step five to determine if a claimant can adjust to other

3   work.   Garrison, 759 F.3d at 1011.   "In order for the testimony of a VE to be considered reliable,

4   the hypothetical posed must include 'all of the claimant's functional limitations, both physical

5   and mental' supported by the record."   Thomas, 278 F.3d at 956.

6        When applying for disability benefits, the claimant has the duty to prove that she is

7   disabled.   42 U.S.C. § 423(c)(5)(A).   The ALJ has an independent "duty to fully and fairly

8   develop the record and to assure that the claimant's interests are considered."   Widmark v.

9   Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443

10  (9th Cir. 1983)).   The ALJ has a duty to further develop the record where the evidence is

11  ambiguous or the ALJ finds that the record is inadequate to allow for proper evaluation of the

12  evidence.   Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan v. Halter, 242

13  F.3d 1144, 1150 (9th Cir. 2001).   A specific finding of ambiguity or inadequacy in the record is

14  not required to trigger the necessity to further develop the record where the record itself

15  establishes the ambiguity or inadequacy.   McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011).

16       2.   Plaintiff's Challenge

17       Plaintiff proffers the ALJ based the RFC determination on the findings of the non-

18  examining state agency physicians whose opinions the ALJ found "persuasive" (AR 21), but of

19  note, the most recent state agency RFC determination from Dr. Mitchell, which the ALJ utilized

20  in making the RFC determination, is dated May 16, 2019 (AR 78), and did not include a review

21  of a considerable portion of the most recent medical records in Exhibits 4F through 8F (AR 385-

22  419), including: multiple objective examination findings documenting a reduced range of motion

23  (AR 401-402); documentation that Plaintiff was treated non-conservatively with the narcotic

24  Norco and the muscle relaxant, Cyclobenzaprine (AR 402, 407); that Plaintiff had an occipital

25  nerve block (AR 418); the updated medical assessment of Plaintiff's treating provider who

26  determined Plaintiff's severe impairments limited her to a reduced range of sedentary work (AR

27  408-411); and the initial treatment record from treating pain management specialist, Dr. Otchere,

28  dated February 2020, who documented examination findings of poor posture cervical flexion and

1    extension limited due to pain, concordant tenderness at the spinous process, paraspinous muscles

2    at the cervical segment and base of the skull, and a positive cervical compression test positive

3    (AR 417-418).   Therefore, Plaintiff argues the ALJ's RFC determination is based upon non-

4    examining state agency physicians who did not review the entire record, and thus not based on

5    substantial evidence.   Plaintiff further argues that because the ALJ rejected the only other MSS

6    from the only medical provider who reviewed the entire medical evidence of record, the ALJ

7    erred by failing to obtain an opinion from an examining physician source or submit the updated

8    records to an "acceptable" medical professional for interpretation.

9          3.      The Court finds the ALJ did not Err in the RFC Determination

10       First, the Court clarifies that it appears state agency physician Dr. Mitchell signed the

11    opinion on July 2, 2019.   (AR 79.)   It was state agency physician Dr. Berry that signed the

12    opinion on May 16, 2019.   (AR 78.)

13       Defendant generally responds that the ALJ identified substantial evidence in support of

14    the RFC and applied the correct legal standards (AR 18-24), and specifically, reviewed

15    Plaintiff's allegations (AR 19); reviewed and analyzed the medical evidence over four, single-

16    spaced paragraphs, highlighting inconsistencies between Plaintiff's allegations and the objective

17    medical evidence (AR 19-21); then analyzed the non-medical evidence, including Plaintiff's

18    activities of daily living, again highlighting the lack of objective corroboration of her allegations

19    of profound limitations (AR 21); and then analyzed the medical opinion evidence, finding the

20    prior administrative medical findings of Dr. Mitchell persuasive but the opinions of Nurse

21    Practitioner Yang and the prior administrative medical findings of Dr. Bobba not persuasive (AR

22    21-23).   Defendant contends the ALJ did not reject Plaintiff's allegations outright, but instead

23    tempered them with the totality of the evidence and concluded her impairments limit her to

24    performing work at the medium exertional level with the additional limitation of being able to

25    only occasionally reach overhead bilaterally due to her cervical spine impairment.   (AR 18.)

26    Defendant highlights that Plaintiff did not identify any specific error regarding the ALJ's general

27    evaluation of the medical and non-medical evidence, nor with the analysis of the treatment

28    provider's opinion, alone, but instead only challenges the evaluation of the prior administrative

1  medical findings of Dr. Mitchell.

2      Turning to the opinion, the ALJ made the following findings when weighing Dr.

3  Mitchell's opinion, specifically referencing and addressing the later received records:

> Dr. Mitchell, a DDS physician, concluded that the claimant can perform medium exertion work and can occasionally reach overhead bilaterally (Exhibit 3A). The undersigned finds that Dr. Mitchell's opinion is persuasive. Dr. Mitchell is not a treating physician and he did not examine the claimant in person, but he reviewed a substantial amount of the claimant's medical records, including progress notes from her primary care provider and imaging studies of her cervical and thoracic spine. Dr. Mitchell identified several specific medical findings to support his conclusions. For example, he clearly took into consideration the updated medical evidence including imaging studies of the claimant's cervical and thoracic spine, as well as office visits during which she complained of neck pain and exhibited pain with flexion and extension of her neck and lumbar spine. Dr. Mitchell also identified several medical findings which are negative, including the claimant's diabetic foot examinations, full range of motion in her major joints, and lack of end organ damage from diabetes or hypertension (Exhibit 3A). Therefore, the undersigned concludes that Dr. Mitchell identified sufficient medical evidence and explanation to support his opinion. Additional medical evidence has been produced since Dr. Mitchell's evaluation. However, the updated treatment records do not document any significant change in the claimant's medical conditions, in terms of her symptoms, physical examination findings, or the nature of treatment that she receives, that would undermine the reliability of Dr. Mitchell's conclusions. Dr. Mitchell's opinion is consistent with the clinical findings documented in the treatment records, such as the full strength, normal sensation, and normal reflexes observed at her February 2020 musculoskeletal examination (Exhibit 8F).

20  (AR 21-22.) The Court finds it significant the ALJ in fact noted some additional medical records

21  entered the record after Dr. Mitchell issued the opinion, however, specifically made a separate

22  determination that such additional evidence did not document any "significant change" in the

23  Plaintiff's medical conditions, in terms of the examination findings or nature of treatment, that

24  "would undermine the reliability of Dr. Mitchell's" opinion, and found that it remained

25  consistent with the longitudinal record as a whole:

26      Defendant correctly argues that, "[c]ontrary to Plaintiff's assertion, an updated medical

27  opinion is not required simply because additional medical evidence is received after the State

28  agency physicians had already reviewed Plaintiff's records," and "[s]uch an occurrence is quite

common." Smith v. Saul, No. 1:19-CV-01085-SKO, 2020 WL 6305830, at *8 (E.D. Cal. Oct. 28, 2020) (citing de Hoog v. Comm'r of Soc. Sec., No. 2:13–CV–0235–KJN, 2014 WL 3687499, at *7 (E.D. Cal. July 23, 2014) ("In virtually every case further evidence is received after the state agency physicians render their assessments—sometimes additional evidence and records are even received after the ALJ hearing."); see also Molina v. Berryhill, No. 2:17-CV-01991 CKD, 2018 WL 6421287, at *3 (E.D. Cal. Dec. 6, 2018) ("Evidence raising an issue requiring the ALJ to investigate further depends on the case [and] [g]enerally, there must be some objective evidence suggesting a condition that could have a material impact on the disability decision.").

Defendant submits that the cases wherein courts find the RFC not supported due to later received medical records not reviewed by physicians whose opinions the ALJ relies on, involved significant raw medical data that indicated significant changes that would necessitate further development of the record.  See Mack v. Saul, No. 118CV01287DADBAM, 2020 WL 2731032, at *2 (E.D. Cal. May 26, 2020) ("The pending findings and recommendations concluded that the ALJ was not obligated to develop the record any further because he summarized and considered the medical records from 2016 and 2017 in rendering his decision . . . [t]he undersigned does not find this to be sufficient [as first,] the new medical records reviewed by the ALJ provided no indication of the impact the diagnosed impairments had on plaintiff's ability to work on a function-by-function basis.") (citing Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, ... the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."); Escudero v. Comm'r of Soc. Sec., No. 1:18-CV-01136-EPG, 2019 WL 4917634, at *1–2 (E.D. Cal. Oct. 4, 2019) ("The Court has reviewed the ALJ's discussion of the medical record following these two opinions to determine whether they required a physician to interpret the data [and while [s]ome of the descriptions seem self-evident [such as reports of no back pain or objective exam results such as normal strength] . . . other descriptions of medical documents post-dating the physicians' opinions appear to be very medical in nature and not susceptible to a lay understanding," such as x-ray images and a diagnosis of diabetic neuropathy, and it was "notable that the ALJ rejected the

opinion of [one non-examining physician] for reasons that would equally apply to the opinion of" another non-examining physician.); Goodman v. Berryhill, No. 2:17-CV-01228 CKD, 2019 WL 79016, at *5 (E.D. Cal. Jan. 2, 2019) ("More problematically, however, the ALJ assigned 'great weight' to State agency medical consultants who did not review plaintiff's records past November 2013, but gave little weight to her treating specialist who assessed plaintiff with an 'L1 compression fracture with worsened kyphosis and worsening pain' after a November 2014 fall [and] [t]he agency doctors' assessments did not account for plaintiff's lumbar vertebra fracture, ankle fracture, ankle surgery, and broken rib sustained after their review . . . these were significant medical events relevant to plaintiff's physical condition during the alleged period of disability.").

Turning to the overall span of records cited by Plaintiff, Defendant in turn first notes that among the records: one is a routine breast ultrasound (AR 385); one is a copy of a previously-submitted April 2019 cervical spine scan (AR 412-13), and one is a second opinion by Nurse Practitioner Yang (AR 408-11), which the ALJ found unpersuasive (AR 22-23). Defendant is correct that the breast ultrasound is routine and found no suspicious abnormality and average tissue, and that the April 3, 2019, cervical spine scan was reviewed by Dr. Mitchell. (AR 79.) However, while Plaintiff did not submit a reply brief, and Plaintiff did generally cite this entire range of records, Plaintiff did not highlight these specific records as being significant, but did cite other specific components, that the Court summarized above.

One of these records is the second opinion of Nurse Practitioner ("NP") Yang. (AR 408-411.) Defendant argues the ALJ properly found the opinion to be unpersuasive, and that Plaintiff identified no specific error with the ALJ's conclusion that the opinions of NP Yang were not persuasive. The ALJ indeed did weigh both opinions, and provided multiple grounds for finding the opinions unpersuasive:

> Mai Tong Yang completed statements on March 11, 2019, and August 17, 2020, indicating that the claimant can sit less than two hours and stand/walk less than two hours in an eight-hour workday. Nurse Yang concluded that the claimant can rarely lift and carry 10 pounds and never lift and carry 20 pounds (Exhibits 3F and 6F). Mai Tong Yang is a nurse practitioner at North Marks Medical Clinic, which is where the claimant receives her primary

medical care. The undersigned acknowledges that Nurse Yang is a treating medical provider and she has been involved in the claimant's regular medical care for multiple years. However, Nurse Yang's opinions are not persuasive, because she did not provide sufficient medical evidence or other explanation to support the limitations she assessed. For example, Nurse Yang did not identify abnormal examination findings on her assessment forms that correlate to the limitations she assessed. Furthermore, the assessments are inconsistent with information contained in the treatment records. For example, Nurse Yang indicated that the claimant experiences dizziness, fatigue, shortness of breath, drowsiness, fainting, and nausea (Exhibit 3F, pages 3 and 6, and Exhibit 6F, page 1). However, clinic records do not document these symptom complaints. On the contrary, during clinic visits the claimant typically denies dizziness, fatigue, shortness of breath, and other symptoms (Exhibits 1F, 2F, and 5F). Nurse Yang noted that the claimant's diagnoses include high blood pressure, diabetes, and thyroid disease (Exhibit 3F, page 3, and 6F, page 1). However, her treatment records show that these conditions are well controlled and do not result in significant ongoing symptoms or functional limitations. Nurse Yang concluded that the claimant must elevate her legs with prolonged sitting (Exhibit 3F, page 4, and 6F, page 2), but she did not offer sufficient explanation for this limitation. Furthermore, treatment records do not document an impairment or clinical findings that would justify this limitation, such as lower extremity edema. Nurse Yang concluded that the claimant has significant limitations for reaching, handling, and fingering (Exhibit 3F, page 5, and 6F, page 3), but she provided no medical evidence or explanation to support this part of the assessment. Furthermore, treatment records do not document an impairment that would reasonably cause these limitations, and the claimant has not complained to her medical providers of symptoms affecting her upper extremities. Nurse Yang did not provide sufficient medical evidence or explanation to justify the conclusion that the claimant would be off task 25 percent or more during a workday, that she is incapable of even low stress work, or that she would be absent from work more than four days per month (Exhibits 3F and 6F). North Marks clinic records do not document medical findings that support Nurse Yang's opinions. On the contrary, clinic records show that the claimant's physical examinations were usually unremarkable. On a few occasions the claimant exhibited limited flexion and extension of her lumbar spine, but the clinic records do not document other medical findings that would support Nurse Yang's opinions. Notably, on March 11, 2019, the day that Nurse Yang completed the first assessment, the claimant's review of symptoms was negative and her physical examination was unremarkable (Exhibit 2F, page 18). Similarly, on August 17, 2020, the date that Nurse Yang completed the second form, the claimant's review of symptoms was again unremarkable, other than high blood pressure, and her physical examination was benign (Exhibit 5F, page 3).

(AR 22-23.)   Again, Plaintiff did not challenge the ALJ's weighing of the physician opinions under the regulations, generally.  The Court finds the ALJ did not err due to NP Yang's second

1  opinion coming after Dr. Mitchell's and being privy to the additional record discussed herein.

2      As to the remaining two exhibits contained within the Plaintiff's cited span of records,

3  Defendant contends they consist of the records of Nurse Practitioner Yang from July 2019

4  through August 2020 (AR 386-407), and the sole treatment note from J&P Spine Center (AR

5  414-19).  Defendant submits these records do not reasonably undermine the prior administrative

6  medical findings of Dr. Mitchell such that a reasonable factfinder would have been compelled to

7  conclude the findings of Dr. Mitchell's were unpersuasive; nor do they consist of raw medical

8  date beyond an ALJ's lay expertise to evaluate.  Plaintiff submitted no reply in response to these

9  arguments, and the Court agrees with Defendant.

10     Defendant submits that the updated records from NP Yang document no long-term,

11  appreciable change in Plaintiff's impairments.  (Opp'n 19.)  In terms of medical signs, Defendant

12  proffers there are only two changes noted in the updated record: Plaintiff presented with

13  restricted range of motion in her neck and back in October 2019 (AR 401-02); and with poor

14  posture, limited cervical range of motion due to pain, tenderness in her cervical spine and base of

15  her skull, and a positive cervical compression sign when evaluated by J&P Spine Center in

16  February 2020.  (AR 417-18.)  Defendant argues these medical signs were not reproduced before

17  October 2019 or since February 2020.

18     In terms of treatment, Defendant notes Plaintiff was prescribed Norco and

19  cyclobenzaprine in July 2019, but she was provided no refills of cyclobenzaprine and only one

20  refill of 20 tablets of Norco on October 24 (AR 402, 407); and was provided no further Norco or

21  cyclobenzaprine (AR 387, 388-89, 390, 392).  Defendant acknowledges that Plaintiff also

22  received one occipital injection in February 2020.  (AR 418.)  However, Defendant submits that

23  this only demonstrates that Plaintiff received escalated treatment for a period of less than 12

24  months from July 2019 through February 2020, and at most, the updated records document a

25  short-term worsening in Plaintiff's conditions that did not last for a continuous period of 12

26  months.  Plaintiff does not address Defendant's argument that these records at most only show a

27  temporary worsening of conditions and diagnoses that were present in previous records.

28     The Court finds it significant that the ALJ expressly considered the updated medical

1  evidence -- both in his general evaluation of the medical evidence, with which Plaintiff does not

2  allege error, and in his evaluation of the medical opinion evidence.  The Court finds the ALJ

3  reasonably considered the record did not show a worsening of Plaintiff's conditions to the extent

4  that it undermined Dr. Mitchell's findings such that those findings must have been rejected.

5  Indeed, despite evaluating that same evidence in the general discussion of the medical opinion

6  evidence and when evaluating the opinions of Nurse Practitioner Yang, Plaintiff has not alleged

7  any error with those analyses.

8          The Court is not unreceptive to the type of argument presented by Plaintiff here.  See,

9  e.g., Daniel Garcia v. Comm'r of Soc. Sec., No. 1:18-CV-00914-SAB, 2019 WL 3283171, at *7

10  (E.D. Cal. July 22, 2019); Fox v. Comm'r of Soc. Sec., No. 119CV00146LJOSAB, 2019 WL

11  6724355, at *14–15 (E.D. Cal. Dec. 11, 2019), report and recommendation adopted, No.

12  119CV00146LJOSAB, 2020 WL 469363 (E.D. Cal. Jan. 29, 2020).  Here however, the Court

13  does not find the ALJ improperly interpreted medical data, or improperly made an RFC

14  determination relying on an opinion from a physician that did not review a sufficient longitudinal

15  record.  See Meadows v. Saul, 807 F. App'x 643, 647 (9th Cir. 2020) ("[A]lthough the non-

16  examining state agency physicians did not review any evidence beyond August 2014, the ALJ

17  did not err in giving great weight to the physicians' opinions.  There is always some time lapse

18  between a consultant's report and the ALJ hearing and decision, and the Social Security

19  regulations impose no limit on such a gap in time.  At the time they issued their opinions, the

20  non-examining experts had considered all the evidence before them, satisfying the requirements

21  set forth in 20 C.F.R. § 404.1527(c)(3)."); Goodman v. Berryhill, No. 2:17-CV-01228 CKD,

22  2019 WL 79016, at *5 (E.D. Cal. Jan. 2, 2019) ("ALJ assigned 'great weight' to State agency

23  medical consultants who did not review plaintiff's records past November 2013, but gave little

24  weight to her treating specialist who assessed plaintiff with an 'L1 compression fracture with

25  worsened kyphosis and worsening pain' after a November 2014 fall [and] [t]he agency doctors'

26  assessments did not account for plaintiff's lumbar vertebra fracture, ankle fracture, ankle surgery,

27  and broken rib sustained after their review . . . these were significant medical events relevant to

28  plaintiff's physical condition during the alleged period of disability.").

The ALJ was not required to adopt the findings or opinion of any of the physicians but rather was required to determine the RFC based on all of the evidence in the record.  See 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner."); Rounds v. Comm'r of Soc. Sec., 807 F.3d 996, 1006 (9th Cir. 2015) ("the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC"); Vertigan, 260 F.3d at 1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").  The regulations provide that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a).

The Court finds the ALJ utilized substantial evidence in the record in making the RFC determination, and Plaintiff has not demonstrated remandable error.  Further, to the extent Plaintiff argues the record needs to be further developed, the facts in this case are not similar to other instances in which the ALJ was found to have a duty to further develop the record.  See Tonapetyan, 242 F.3d at 1150-51 (ALJ erred by relying on testimony of physician who indicated more information was needed to make diagnosis); Hilliard v. Barnhart, 442 F.Supp.2d 813, 818-19 (N.D. Cal. 2006) (ALJ erred by failing to develop record where he relied on the opinion of a physician who recognized he did not have sufficient information to make a diagnosis).  The Court finds the ALJ's RFC determination to be proper, reasonable, based on substantial evidence in the record, and not deficient due to lack of use of a medical opinion.  See Smolen, 80 F.3d at 1279 (substantial evidence more than a scintilla, but less than a preponderance); Burch, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

/ / /

/ / /

/ / /

/ / /

1

**V.**

2

**CONCLUSION AND ORDER**

3     Based on all of the foregoing reasons, the Court finds: (1) substantial evidence supports

4  the ALJ's step four findings concerning Plaintiff's past relevant work and substantial gainful

5  activity; and (2) the ALJ's RFC determination is proper and supported by substantial evidence in

6  the record.  The Court concludes the ALJ's decision is free from remandable legal error.

7     Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the

8  Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be

9  entered in favor of Defendant Commissioner of Social Security and against Plaintiff Rachel

10  Lillian Prieto.  The Clerk of the Court is directed to CLOSE this action.

11

IT IS SO ORDERED.

12

13  Dated:   __**September 2, 2022**__

UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28